Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VII

| | | |
|---|---|---|
| COOPERATIVA DE AHORRO Y CRÉDITO DE AGUADILLA<br><br>Recurrida<br><br>v.<br><br>ÁNGEL VÁZQUEZ HERNÁNDEZ ET AL<br><br>Peticionaria | KLCE202400346 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Núm. AG2023CV00269<br><br>Sobre: COBRO DE DINERO Y EJECUCIÓN DE HIPOTECA |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de mayo de 2024.

La parte peticionaria, Enrique Quiñones Vázquez, su esposa Jaimys Santana González y la Sociedad Legal de Gananciales compuesta por ambos, acude ante nos de una *Orden* emitida y notificada por el Tribunal de Primera Instancia, Sala de Aguadilla, el 16 de enero de 2024. Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* una solicitud de relevo de sentencia presentada por la parte peticionaria.

Los hechos esenciales para comprender la determinación que hoy alcanzamos se incluyen a continuación.

**I.**

El 23 de febrero de 2023, la Cooperativa de Ahorro y Crédito de Aguadilla (en adelante, Cooperativa o parte recurrida) incoó una *Demanda* en contra de Ángel Vázquez Hernández, su esposa, Mildred Vargas Sánchez, la Sociedad Legal de Gananciales compuesta por ambos y la parte peticionaria.[1] En pliego, alegó que, para la fecha del 9 de septiembre de 2008, el señor Vázquez Hernández y su esposa, la señora Vargas Sánchez, otorgaron un pagaré a su orden. Indicó que para garantizar el pago del aludido pagaré se

---

[1] La referida demanda fue enmendada al día siguiente.

Número Identificador

SEN2024_____

constituyó una hipoteca voluntaria sobre un inmueble ubicado en el Barrio Caimital Bajo en Aguadilla, la cual fue inscrita al Folio 1,385 del Tomo 645 del Registro de la Propiedad. La Cooperativa afirmó que, desde el mes de noviembre de 2019, el señor Vázquez Hernández y su esposa, la señora Vargas Sánchez, incumplieron con su obligación de pagar en plazos mensuales el principal y los intereses acordados. Además, detalló que, a la fecha del 26 de mayo de 2020, los esposos adeudaban ciento cuarenta mil seiscientos cuarenta dólares con cincuenta y un centavos ($140,640.51) por concepto de principal, veintisiete mil ochocientos treinta y un dólares con cuarenta centavos ($27,831.40) de intereses al tipo pactado de seis punto setenta y cinco por ciento (6.75%), más mil seiscientos sesenta y siete dólares ($1,667.00) por concepto de recargos acumulados. A su vez, reclamó que los mencionados esposos adeudaban las costas, gastos y honorarios de abogado equivalentes a razón del diez por ciento (10%) del principal de la deuda, conforme fue presuntamente pactado en el antedicho pagaré.

De otra parte, la Cooperativa señaló que, según constaba de un Estudio de Título realizado, la propiedad hipotecada fue vendida el 29 de noviembre de 2013, a la parte peticionaria, sin su consentimiento. En virtud de lo anterior, sostuvo que el señor Vázquez Hernández y su esposa, la señora Vargas Sánchez, no quedaron liberados de la responsabilidad pactada en el pagaré hipotecario. Así, pues, arguyó que ellos y la parte peticionaria debían responder solidariamente por el pago del referido préstamo hipotecario. Ante lo expuesto, la Cooperativa le suplicó al tribunal de instancia aplicar la cláusula de aceleración pactada en la escritura de hipoteca, ordenar la ejecución de la finca y su venta en pública subasta.

El 26 de junio de 2023, la Cooperativa presentó *Moción Solicitando Anotación de Rebeldía.* En el escrito, constató que emplazó al señor Vázquez Hernández y su esposa, la señora Vargas Sánchez, por edicto, el 9 de mayo de 2023, y que emplazó personalmente a la parte peticionaria, el 2 de mayo de 2023. Aseveró que había trascurrido el término dispuesto por el ordenamiento civil vigente para que las partes contestaran la demanda, y

ninguno de los codemandados había presentado su alegación responsiva. En virtud de ello, le solicitó al tribunal de instancia que les anotara la rebeldía.[2]

Ese mismo día que solicitó la anotación de rebeldía de los codemandados, la Cooperativa instó una solicitud de sentencia sumaria. En la misma, alegó que no había disputa en cuanto a que el señor Vázquez Hernández y su esposa, la señora Vargas Sánchez, incumplieron con los pagos y términos de un pagaré a su favor, el cual estaba garantizado con una hipoteca voluntaria. A su vez, afirmó que no existía controversia en cuanto a que "el pagaré dispon[ía] claramente que de cualquier pago no ser efectuado, luego de vencido el mismo, se entender[ía] vencidos los demás plazos y ser[ía] exigibles". Además, reseñó que la Certificación Registral número 2023-007188-CERT mostró que la propiedad objeto de hipoteca fue vendida a la parte peticionaria, el 29 de noviembre 2013. A tales efectos, le peticionó al foro primario que dispusiera sumariamente de la presente acción.[3]

Según solicitado, el 29 de junio de 2023, notificada el 30 del mismo mes y año, el tribunal de instancia le anotó la rebeldía a la parte peticionaria y al señor Vázquez Hernández y su esposa, la señora Vargas Sánchez.[4]

En reacción, el 20 de julio de 2023, la parte peticionaria contestó la demanda. En el escrito, alegó que se personó a la Cooperativa acompañada de los esposos Vázquez Hernández y Vargas Sánchez para tramitar la sustitución del deudor de la antedicha hipoteca, sin embargo, presuntamente, se le indicó que el cambio no podía efectuarse por problemas internos de la institución. Según detalló, pese a lo relatado anteriormente, la institución financiera continuó aceptándole los pagos. Señaló que, posteriormente, se acogió a la moratoria concedida a causa del Huracán María y de la pandemia del COVID-19. Luego, en marzo de 2020, alegadamente, intentó poner al día los pagos de la hipoteca, pero la Cooperativa no los aceptó. Así, pues, alegó que no existía una causa de acción

---

[2] *Véase*, Entrada núm. 24 del *Sistema Unificado de Manejo y Administración de Casos (SUMAC).*
[3] *Véase*, Entrada núm. 25 de SUMAC.
[4] *Íd.*, Entrada núm. 27.

en su contra, puesto que no tenía una relación de acreedor-deudor con la Cooperativa. Al amparo de lo expuesto, le rogó al foro primario que desestimara la *Demanda* en lo que concernía a su persona.

Tras varias instancias procesales, el 12 de septiembre el 2023, notificada el 12 del mismo mes y año, el tribunal de instancia dictó *Sentencia* en rebeldía. Mediante el referido dictamen, condenó a los codemandados a pagar solidariamente las sumas reclamadas por la Cooperativa, más las costas, gastos, y honorarios de abogado equivalentes a razón del diez por ciento (10%) del principal de la deuda. A su vez, ordenó al alguacil regional a efectuar la venta en pública subasta de la propiedad hipotecada.

Posteriormente, el 8 de enero de 2024, la parte peticionaria presentó una *Moción al amparo de la Regla 49. 2 de Procedimiento Civil.* En la misma, arguyó que se le debía relevar de los efectos de la sentencia, puesto que la misma no se dictó en su contra, y las consecuencias del dictamen no la involucraban.[5]

Examinada la moción, el 16 de enero de 2024, el foro primario emitió una *Orden*, en la cual la declaró *No ha Lugar*.

El 30 de enero de 2024, la parte peticionaria le solicitó al aludido foro que reconsiderara su determinación. Insistió en que la sentencia no se dictó en su contra. A su vez, afirmó que el relevo de sentencia no perjudicaría a la Cooperativa.

El 13 de febrero de 2024, la Cooperativa se opuso a la reconsideración. Esencialmente, aseveró que la parte peticionaria tenía la obligación de oponerse a la solicitud de sentencia sumaria, sin embargo, se cruzó de brazos y descansó en su contestación a la demanda. Por otra parte, indicó que la parte peticionaria había repetido los argumentos utilizados en otros escritos, y que los mismos, presuntamente, ya habían sido atendidos por el tribunal. Así, pues, le suplicó al foro primario que declarara sin lugar la reconsideración.

---

[5] Apéndice del recurso, pág. 68.

El 14 de febrero de 2024, la parte peticionaria acudió ante este Tribunal mediante un recurso de *certiorari* y en auxilio de jurisdicción. Ese mismo día, luego de evaluar el expediente ante nuestra consideración, denegamos el auxilio y, el 29 de febrero de 2024, desestimamos el referido recurso por falta de jurisdicción, por prematuro. Coincidimos en que la parte peticionaria había recurrido a esta Curia de manera inoportuna, dado a que el antedicho recurso fue presentado antes de que el tribunal de instancia atendiera la solicitud de reconsideración.

En desacuerdo, el 7 de marzo de 2024, la parte peticionaria incoó ante este Tribunal una *Moción urgente de reconsideración.*

Al día siguiente, el foro primario declaró sin lugar la solicitud de reconsideración ante su consideración.

Asimismo, el 12 de marzo de 2024, esta Curia declaró *No ha Lugar* la *Moción urgente de reconsideración.*

El 14 de marzo de 2024, la parte peticionaria nuevamente nos solicitó reconsiderar la determinación que emitimos el 29 de febrero de 2024, mediante la cual desestimamos su recurso de *certiorari.* Particularmente, señaló que el tribunal de instancia había emitido una determinación, el 8 de marzo de 2024, en torno a la moción de reconsideración que estaba ante su consideración.

Al día siguiente, declaramos *No Ha Lugar* la antedicha moción. En la misma, señalamos que, resuelta la moción de reconsideración por el tribunal de instancia, lo que procedía era presentar un recurso de *certiorari* conforme a la Regla 32(c) del Tribunal de Apelaciones.

Así, pues, el 25 de marzo de 2024, la parte peticionaria acudió nuevamente ante esta Curia mediante un recurso de *certiorari.* En el mismo, planteó lo siguiente:

> Primer Error: Incidió el Honorable TPI al autorizar un Mandamiento de Ejecución de Sentencia (el 31 de octubre de 2023) y una Orden de Ejecución de Sentencia (el 7 noviembre de 2023) de una Sentencia dictada en rebeldía contra varios codemandados cuando la parte peticionaria se encontraba activamente litigando el caso de título.

Segundo Error: Incidió el Honorable TPI al dictaminar los mencionados Mandamientos de Ejecución de Sentencia y Orden de Ejecución de Sentencia dejando en el desamparo a la parte peticionaria sin su día en Corte y riesgo de no poder defender su interés en la propiedad inscrita a su nombre en el Registro de la Propiedad.

Tercer Error: Incidió el Honorable TPI al declarar No Ha Lugar la Moción al Amparo de la Regla 49.2 de Procedimiento Civil instada por la parte peticionaria para que se le relevara de los efectos tan perjudiciales de los documentos notificados por instancia los días 31 de octubre y 7 de noviembre de 2023.

Igualmente, la parte peticionaria presentó una *Moción en auxilio de jurisdicción.*

Examinado lo anterior, el 25 de marzo de 2024, ordenamos a la Cooperativa a que, en o antes del 2 de abril de 2024, mostrara causa por la cual este Tribunal no debía declarar con lugar el auxilio de jurisdicción y expedir el recurso de epígrafe.

En cumplimiento, el 1 de abril de 2024, la Cooperativa presentó *Oposición a expedición de auto de certiorari y auxilio de jurisdicción*. Sostuvo que la parte peticionaria no demostró que el tribunal de instancia se excedió en el ejercicio de su discreción, ni que estaban presentes los elementos constitutivos de fracaso a la justicia. Específicamente, indicó que la parte peticionaria dejó pasar el término para solicitar reconsideración y recurrir en alzada, de modo que utilizó su solicitud de relevo de sentencia para reabrir cuestiones que fueron resueltas de manera final.

Al día siguiente, declaramos sin lugar la solicitud de auxilio.

Inconforme, el 8 de abril de 2024, la parte peticionaria solicitó que reconsideráramos la antedicha resolución.

Evaluada la solicitud, el 2 de abril de 2024, declaramos *No Ha Lugar* la reconsideración.

Luego de examinar detenidamente el expediente que nos ocupa, procedemos a delimitar el trasfondo normativo aplicable.

## II.

### A. *Certiorari*

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. 32 LPRA sec. 3491; *Rivera et al. v. Arcos Dorados et al.,* 2023 TSPR 65, 212 DPR ___ (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *Mun. Caguas v. JRO Construction Inc.,* 201 DPR 703, 710 (2019). Aunque la característica principal del recurso reside en el carácter discrecional del mismo, tal determinación no es irrestricta, está sujeta a los criterios señalados en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. Así, pues, el foro apelativo deberá auscultar los criterios de la aludida regla para guiar su discreción al intervenir con la resolución u orden recurrida. La Regla 40 dispone:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B) Si la situación de los hechos planteada es la más indicada para analizar el problema.
>
> C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.
>
> 4 LPRA Ap. XXII-B, R. 40.

La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus

méritos. *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). Sin embargo, la discreción no opera en el vacío y en ausencia de parámetros que la encaminen, sino que el foro apelativo cuenta con los criterios enumerados en dicha Regla para asistirlo y determinar si en un caso en particular procede que se expida el auto discrecional de *certiorari.* *BPPR v. SLG Gómez-López,* 2023 TSPR 145, a la pág. 23, 213 DPR ___ (2023).

## B. Moción de Relevo de Sentencia

Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:

a) error, inadvertencia, sorpresa o negligencia excusable;

b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;

c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;

d) nulidad de la sentencia;

e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

32 LPRA Ap. V, Reg. 49.2; *SLG Rivera-Pérez v. SLG Díaz-Doe et al.,* 207 DPR 636, 657 (2021); *Náter v. Ramos,* 162 DPR 616, 624 (2004).

La Moción de Relevo de Sentencia integra en las reglas el objetivo principal de los tribunales y reconoce la facultad importante que estos tienen para dejar sin efecto alguna sentencia u orden suya por causa justificada. El referido remedio de reapertura se origina en la propia razón de ser de los foros judiciales: hacer justicia. *Piazza Vélez v. Isla del Rio, Inc.,* 158 DPR 440, 448 (2003); *Ortiz Serrano v. Ortiz Díaz,* 106 DPR 445, 449 (1977); *Southern Construction Co. v. Tribunal Superior,* 87 DPR 903, 905–906 (1963). La Moción de Relevo proporciona un mecanismo procesal post sentencia para impedir

que tecnicismos y sofisticaciones frustren los fines de la justicia. Nada es más frustrante para el logro de ese propósito que negar a una parte su día en corte. Ahora bien, aunque se favorece su interpretación liberal, no quiere decir que "es [una] llave maestra para reabrir a capricho el pleito ya adjudicado y echar a un lado la sentencia correctamente dictada". *Reyes v. E. L. A. et al.,* 155 DPR 799, 809 (2001); *Ortiz Serrano v. Ortiz Díaz,* supra, pág. 449; *Ríos v. Tribunal Superior,* 102 DPR 793, 794 (1974). Por ello, el relevar a una parte de los efectos de la sentencia es una facultad discrecional del foro sentenciador, salvo en los casos de nulidad o cumplimiento de sentencia. *Náter v. Ramos,* supra, pág. 625.

Al justipreciar una solicitud de relevo al amparo de la Regla 49.2, el tribunal tiene el deber de tomar en consideración ciertos criterios inherentes a la regla, entre éstos: si el peticionario tiene una buena defensa en sus méritos; el tiempo que media entre la sentencia y la solicitud del relevo, y el grado de perjuicio que pueda ocasionar a la otra parte la concesión del relevo de sentencia. *Reyes v. E.L.A. et al.*, supra; *Pardo v. Sucn. Stella,* 145 DPR 816, 825 (1998); *Neptune Packing Corp. v. Wackenhut Corp.*, 120 DPR 283, 294 (1988). Asimismo, el promovente debe demostrar, mediante preponderancia de prueba, los hechos que justifican la moción. *Peña Lacern v. Martínez Hernández y otros,* 210 DPR 425, 439 (2022).

Finalmente, precisa apuntalar que es norma reiterada que la solicitud relevo de sentencia no se puede utilizar como sustituto del recurso de revisión. *Pagán v. Alcalde Mun. de Cataño,* 143 DPR 314, 327-328 (1997). De modo, que una parte no puede obviar el trámite apelativo y, en su defecto, presentar una moción al amparo de la Regla 49.2, *supra.*

**C. Responsabilidad solidaria**

Las obligaciones con una multitud de deudores pueden ser mancomunadas o solidarias. La diferencia es que, en las obligaciones mancomunadas, cada deudor cumple con su parte de la deuda de manera independiente. Artículo 1092 del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 9051. No obstante, en la obligación solidaria

cada deudor tiene el deber de satisfacer la totalidad del crédito que ostenta el acreedor. *Íd.,* Artículo 1102, 31 LPRA sec. 9061. El deudor solidario que pague la totalidad de la deuda puede presentar una acción de nivelación contra sus codeudores solidarios. *Íd.,* Artículo 1539, 31 LPRA sec. 10804. Ahora bien, la solidaridad no se presume y tiene que estar expresamente determinada en la obligación para que surta efectos. *Fraguada Bonilla v. Hospital Auxilio Mutuo,* 186 DPR 365, 375 (2012).

**III**

La parte peticionaria nos solicita que revisemos la negativa del tribunal de instancia de declarar con lugar su solicitud de relevo de sentencia. Principalmente, sostiene que el dictamen no se emitió en su contra y que no la involucraba.

Luego de evaluar detenidamente el expediente ante nuestra consideración, colegimos que los argumentos presentados por la parte peticionaria no cumplen con el estándar de prueba que justifica el relevo de una sentencia. Meras alegaciones de error, inadvertencia, sorpresa o negligencia excusable no son suficiente para derrotar la deferencia que le debemos a la determinación del foro recurrido. Tampoco de los hechos presentados y las explicaciones brindadas podemos concluir que la apelante ostenta una defensa meritoria. Por otra parte, los planteamientos presentados por la parte peticionaria en cuanto a que se le debió levantar la rebeldía, puesto que estaba litigando el caso activante, y que se le impidió defender su interés de propiedad, son argumentos que se pudieron haber planteado en apelación. Conforme esbozamos, es norma reiterada que la Moción de Relevo de Sentencia conforme a la Regla 49.2 de Procedimiento Civil, *supra*, no se puede utilizar como sustituto del recurso de revisión. *Pagán v. Alcalde Mun. de Cataño*, supra, págs. 327-328.

En ausencia de una demostración concreta de que la parte peticionaria tiene una buena defensa en sus méritos para relevarla de los efectos de la sentencia que nos ocupa, coincidimos con la determinación del foro recurrido.

Ahora bien, de una lectura de la sentencia ante nuestra consideración, nos percatamos que el tribunal de instancia condenó a los codemandados a pagar solidariamente las sumas reclamadas por la parte recurrida, más las costas, gastos, y honorarios de abogado equivalentes, a razón del diez por ciento (10%) del principal de la deuda. Como bien reseñamos, la solidaridad no se presume y tiene que estar expresamente determinada en la obligación para que surta efectos. *SLG Báez-Casanova v. Fernández,* supra, pág. 204; *Fraguada Bonilla v. Hospital Auxilio Mutuo,* supra, pág. 375. El pagaré hipotecario que nos ocupa en ninguna parte especificaba que el principal, los intereses al tipo pactado, los recargos acumulados, o las costas, gastos y honorarios de abogado se pagarían de manera solidaria. Quienes estaban vinculados por el pagaré eran, exclusivamente, el señor Vázquez Hernández y su esposa, la señora Vargas Sánchez. Aunque lo anterior no fue planteado ante este foro, como se sabe, cuando el foro primario comete un error de derecho, nuestra función de revisión no está limitada a la consideración de los errores planteados. *López Vicil v. ITT Intermedia, Inc.,* 142 DPR 857, 867 (1996).

En virtud de lo anterior nos es forzoso expedir el presente recurso para modificar el dictamen recurrido, y, así, aclarar que los codemandados no son deudores solidarios.

**IV.**

Por las razones antes expuestas, expedimos el auto de *certiorari* y modificamos la *Sentencia* recurrida para aclarar que los codemandados no son deudores solidarios. Así, aclarado lo anterior, confirmamos el dictamen que nos ocupa.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones